43525. FETT v. ALDERMAN et al.

Submitted March 6, 1968—Decided April 23, 1968.

*Israel Katz, A. Ed Lane,* for appellant.

*Long, Weinberg & Ansley, Sidney F. Wheeler, Troutman, Sams, Schroder & Lockerman, Robert L. Pennington,* for appellees.

JORDAN, Presiding Judge. 1. During the course of the trial counsel for the plaintiff elicited from the defendant Alderman the admission that he had no permit from the Corps of Engineers for the floating dock involved in the collision and that he was aware of a regulation concerning permits. Counsel then sought an answer to the question, "And was that regulation complied with with respect to this particular swimming dock?" whereupon Alderman's counsel objected to the question as calling for a conclusion of law by the witness. The plaintiff's counsel stated that the witness had answered the question "without equivocation at the time of the deposition," and the trial court stated "Well, even so I think the objection is good. I sustain the objection." This ruling is asserted as error in the fourth enumeration, and corresponds to Special Ground 4 of the motion for new trial.

In the posture here presented we are not concerned with whether the deposition testimony itself is admissible as an admission against interest, even though counsel purports to show that the defendant answered such a question in the negative in a deposition which is not in evidence. Instead, the issue is confined to whether the plaintiff in the course of trial is entitled to elicit from

a defendant an answer which in effect requires the witness to give an opinion as to an ultimate issue for decision by the jury on a mixed question of law and fact, that is, whether the defendant violated particular regulations of the Corps of Engineers, or stated otherwise, whether he was guilty of negligence per se in failing to obtain a permit for the floating dock which he had on Lake Lanier, if the regulations required such a permit.

We think under the circumstances here shown the trial judge properly sustained the objection to the question as calling for an inadmissible conclusion of law and that it is immaterial whether this conclusion was sought from an opposing party or some other witness. See *Akin v. Randolph Motors,* 95 Ga. App. 841, 846 (3) (99 SE2d 358), involving the refusal to allow a police officer to testify which party had the right of way; *Travelers Ins. Co. v. Thornton,* 119 Ga. 455 (1, 2) (46 SE 678), involving the testimony of an expert as to a "contributing cause" of an injury; and *Cone v. Davis,* 66 Ga. App. 229, 234 (17 SE2d 849), involving the testimony of a sheriff as to "an excessive rate of speed" and "driving in a reckless manner and not in regard to safety."

2. The fifth, sixth, and seventh enumerations correspond to Special Grounds 5, 6, and 7 of the motion for new trial, and are directed to rulings of the trial court on the pleadings at the close of the evidence which eliminated, when considered with the instructions to the jury, substantial portions of the Corps of Engineers regulations as a basis for liability. These regulations, referred to in the preceding division of this opinion, and promulgated as § 311.4 (a) and (b) of Title 36 of the Code of Federal Regulations in effect at the time of the collision, are as follows:

"(a) All boats or other vessels when not in actual use must be either removed from the reservoir, securely moored at authorized docks or boathouses where supervision by the owner or his representative is provided on a 24-hour-day basis, or placed in the care of a marina concessionaire, State or local managing agency or other party authorized to care for floating equipment on a 24-hour-day basis.

"(b) All boats, barges and other vessels or floating facilities will be moored only in locations designated by the District Engi-

neer or his designated representative. All floating or stationary mooring facilities will be constructed in accordance with plans and a permit approved by the District Engineer or his designated representative. He shall have authority to revoke such permit and require removal of the facility for failure of the permittee to comply with the terms and conditions of the permit or with the regulations in this part."

While counsel at the trial referred to evidence of a violation of these regulations, and the existence of proof is mentioned in the motion for new trial and the brief, the only evidence actually adduced on trial is to the effect that the defendants, even if aware of the regulations, had no permit for the swimming dock, that it was floating on Lake Lanier, and, under varying versions of the situation as related by various witnesses, it was either anchored to the bottom by a rope attached to two concrete blocks in water of less than a depth of 12 feet no more than about 40 feet from the shore, or drifting at a considerably greater distance from the shore. There is no dispute as to the fact that it consisted of a wooden platform on a metal frame, approximately 10 feet square, suspended over empty 55 gallon oil drums, and that it was unlighted and not equipped with any reflectors or warning devices.

Following his previous rulings on the pleadings, the trial court in his instructions to the jury with respect to the regulations in effect limited the jury to a finding of negligence per se in that the "swimming raft or floating facility was not constructed in accordance with plans and a permit approved by the district engineer or his designated representative," that "in determining whether or not it would impose any liability you would consider whether or not, if [there is] evidence that the defendant, or defendants, did not obtain a permit . . . whether or not that had anything to do with the collision . . . that is, whether or not the absence of a permit, if such was absent, was any part of the proximate cause . . . Simply to say that [a] certain thing constitutes negligence per se because of being in violation of an authorized regulation does not mean that it is, or is not, a part of the proximate cause of the collision. That, of course, is a matter for you to determine."

The quoted regulations are by no means self-explanatory in respect to applicability to the swimming dock or the necessity of a permit for such a facility, or if the facility here involved required a permit, what type of construction would meet with approval, or where such a facility could be placed, or whether any lighting or warning device would be required. In such a situation the regulations themselves provide no meaningful guide standing alone, except in the sense that "boats or other vessels" not in use have to be removed or moored in certain places, and "boats, barges and other vessels or floating facilities" have to be moored in certain designated places, as to which the evidence in the present case is silent, and that "floating or stationary mooring facilities" have to be constructed "in accordance with plans and a permit approved by the District Engineer or his approved representative." Except as heretofore shown the plaintiff offered no proof, even if available, to show any violation of the regulations except in the limited sense presented to the jury by the trial court's instructions. Moreover, aside from the regulations here under consideration, the issue of whether the defendants were negligent in creating a hazard to navigation was presented to the jury under adequate instructions, and the jury had before it, on the issue of negligence, but not negligence per se in violation of any specific regulations, substantially the same issues as the plaintiff apparently sought to raise as being in violation of the regulations.

Considering the rulings of the trial court on the pleadings together with instructions as given based on the evidence actually adduced (and counsel for the plaintiff fails to show wherein the trial court erroneously deprived him of any opportunity to adduce further evidence of any violation of the regulations) we find no harmful error for any reason with respect to any rulings asserted as error in the fifth, sixth, and seventh enumerations.

3. In his eighth enumeration, which corresponds to Special Ground 8 of the motion for new trial, the plaintiff complains of the giving of certain instructions to the jury at the request of the defendant Morden, to which timely objection was made after the court had instructed the jury. The excerpt as given by the court is as follows:

"I charge you that the law of Georgia requires that power boats operating at night shall be equipped with light sufficient to throw light in the direction of travel for a distance of not less than 150 feet. I charge you that if you find that this boat was not equipped with such a light, this constitutes negligence as a matter of law and if you further find that the operator of this boat was negligent in this manner and that his negligence was the sole proximate cause of the collision, then this would bar any recovery on the part of the plaintiff, and it would then be your duty to cease your deliberations and return a verdict for the defendants."

*Code Ann.* § 26-7322 provides in pertinent part: "Any boat, vessel or water-going craft of any size or description whatsoever operating upon the fresh waters of this State shall observe the following rules and regulations: . . .

"(g) Power boats operating at night shall be equipped with lights sufficient to throw light in the direction of travel for a distance of not less than 150 feet."

The charge as given is a correct statement of law, and was properly adjusted to the pleadings and the evidence. The plaintiff in these proceedings did not seek to charge the operator of the boat with liability, and a proper defense was the negligence, if any, of the operator of the boat, including his failure to use a light in the direction of travel, as to which there is evidence. No basis whatsoever appears in the cited section for any interpretation to the effect that such a light is intended only for sporadic use by the operator, to spot the shoreline or other hazards when in his judgment it becomes necessary, instead of continuous use in the direction of travel.

There is no merit in the eighth enumeration.

4. The ninth enumeration, which corresponds to Special Ground 9 of the motion for new trial, is based on the alleged failure to instruct on the doctrine of concurrent cause, despite requested instructions to such effect, and an objection to the instructions as given as insufficient. The instructions as actually given affirmatively rebut the contentions of counsel, for the trial court made it abundantly clear that what constitutes proximate cause as a basis for recovery could include concurrent acts of negligence. This enumeration is without merit.

5. In the tenth enumeration and Special Ground 10 of the motion for new trial the plaintiff complains that the judge was repetitious in his instruction to the jury and emphasized in an extreme manner the circumstances under which the jury could find for the defendants, and in support thereof quotes numerous excerpts from the instructions. The only argument offered in support of this enumeration in the brief is a quotation of *Code Ann.* § 70-207 (c) requiring an appellate court to "consider and review erroneous charges where there has been a substantial error in the charge which was harmful as a matter of law" irrespective of objections in accordance with the preceding Subdivisions (a) and (b) of the section.

Considered individually and collectively the quoted excerpts from the instructions disclose a fair treatment of the pleadings and evidence and the law applicable thereto, in terms of issues for the jury to consider, and nothing appears which would support a holding by this court of substantial error in the charge which was harmful as a matter of law.

This enumeration is without merit.

6. In the eleventh enumeration, corresponding to Special Ground 11 of the motion for new trial, the plaintiff complains of the refusal to give a requested charge as follows:

"I charge you that the only statutory law or regulation of the State of Georgia dealing with lights on watercraft being driven at night requires only that the watercraft exhibit a light sufficient to make the watercraft's presence and location known to any and all other craft within 200 feet. There is no statutory law or regulation of the State of Georgia which requires the operator of a motor boat to keep a light for illumination ahead for his own benefit or visibility. As to whether a light on the boat for illumination for the driver's benefit or visibility would improve or decrease the visibility of the driver of the boat under the facts and circumstances of this case is a matter to which you may give consideration."

The plaintiff contends that the foregoing is a correct statement of law based on Regulation 65-301 of the State Game and Fish Commission issued pursuant to *Code Ann.* §§ 17-602 and 17-611. The citation (65-301) apparently refers to the

*1965* regulation, promulgated on April 29, 1965, and effective 30 days thereafter (currently published in identical language as 260-5-.09 of the official Rules and Regulations of the State of Georgia) which reads as follows:

"(i) No person shall operate any watercraft on any of the waters of this State, as defined in Georgia Code, Section 17-602, during hours of darkness unless showing a light sufficient to make the watercraft's presence and location known to any and all other craft *within 200 feet.*"

The *1964* regulation, promulgated on February 4, 1964, and effective 30 days thereafter, reads as follows:

"(h) No person shall operate any watercraft on any of the waters of this State during the hours of darkness unless showing a light sufficient to make the watercraft's presence and location known to any and all other craft *within a reasonable distance.*"

Neither the cited regulation nor the regulation in effect in 1964 is subject to the interpretation insisted upon in the requested charge, which would have the effect of repealing the provisions of *Code Ann.* § 26-7322, as to which the State Game and Fish Commission has no authority, and obviously did not intend, for *Code Ann.* § 26-7322 requires a light in the direction of travel to enable the operator to observe obstacles in the path of travel (see Division 4 of this opinion) whereas the cited regulation in effect in 1964 and as thereafter amended is clearly for the purpose of enabling others to see a watercraft being operated at night.

The eleventh enumeration is without merit.

7. The twelfth enumeration, corresponding to Special Ground 12 of the motion for new trial, is directed to the refusal of the trial court to exclude the deposition testimony of the plaintiff's physician on cross examination concerning this physician's advice to the plaintiff to refrain from the use of alcohol because of a physical condition, Whipple's intestinal lipodystrophy, for which the plaintiff was under treatment when injured, and the opinion of the physician that the plaintiff had not been following his physician's advice, which failure would aggravate the symptoms as to diarrhea and abdominal discomfort. The plaintiff sought to recover from the defendants on the theory that the

collision aggravated the symptoms of the disease. Under the circumstances here shown the physician's testimony to the effect that in his opinion the continued use of alcohol had affected the recovery from Whipple's disease was properly admissible to rebut the contention of the plaintiff. The plaintiff admitted that he had not entirely refrained from the use of alcohol, and that he knew that use would affect his condition.

This enumeration is without merit.

8. The thirteenth enumeration, which corresponds to Special Ground 13 of the motion for new trial, is directed to the method of questioning the defendant Alderman as requiring a self-serving conclusion on an issue for ultimate jury determination. The transcript shows the following:

"Q. Had Dr. Morden ever authorized or permitted the raft to be left out in the lake at a place where it would constitute a hazard to navigation?

"A. No, sir.

"Q. Had Dr. Morden ever—

"[Counsel for the plaintiff]: Your Honor, I believe as to what constitutes a hazard for navigation calls for a determination, a conclusion of this witness."

Counsel renewed this objection after argument by opposing counsel, as being an issue for ultimate determination by the jury, and the trial judge overruled the objection.

In response to further questioning Alderman testified that the other defendant had never authorized the swimming dock or raft to be placed or left out at night so that it would drift or constitute a hazard to navigation. Considered in context with other testimony, the real import is to show that *if* the dock was placed or left in a position whereby it would drift or create a dangerous situation, what was done was without the authority or permission of Morden. The transcript is replete with testimony to show that the use of the raft as between the co-owners was on a "first come, first served" basis, and that Alderman was exercising complete control over the raft on the day in question, although possibly during the afternoon Morden could have observed where the raft was while he was in the area. Obviously the testimony was not self-serving as to Alderman. To the ex-

tent that it embraced any conclusion as to what constitutes a hazard to navigation, we do not think the circumstances show a situation whereby the jury was misled or confused so as to constitute harmful error. As distinguished from the ruling in Division 1, involving the sustaining of an objection to a matter clearly showing a conclusion of law, the objection here involves the refusal to sustain an objection where the conclusion was merely incidental to the fact brought out, that Morden neither authorized nor acquiesced in any conduct of Alderman as to Alderman's use of the facility which might constitute a hazard to navigation. See the discussion in *Bentley v. Ayers,* 102 Ga. App. 733, 735 (3) (117 SE2d 633).

There is no merit in this enumeration.

9. The first three enumerations involve the sufficiency of the evidence in terms of the refusal of the court to direct a verdict for the plaintiff or to grant a motion for new trial on the general grounds. The evidence does not demand a verdict for the plaintiff and it necessarily follows that the jury was authorized under the evidence to find in favor of the defendants. Accordingly, the trial judge did not err in refusing to direct a verdict for the plaintiff or in overruling the motion for new trial on the general grounds, or for any reason asserted in the special grounds as shown by the preceding divisions of this opinion.

*Judgment affirmed. Pannell and Deen, JJ., concur.*