573 So.2d 889 (1990)
EDWARD J. SEIBERT, A.I.A., ARCHITECT AND PLANNER, P.A., and Edward J. Seibert, Individually, Appellants,
v.
BAYPORT BEACH AND TENNIS CLUB ASSOCIATION, INC., Appellee.
No. 89-02704.
District Court of Appeal of Florida, Second District.
December 12, 1990.
Rehearing Denied February 6, 1991.
*890 Terry A. Smiljanich of Blasingame, Forizs & Smiljanich, P.A., St. Petersburg, for appellants.
Alan S. Becker, Herbert O. Brock and Michele G. Miles of Becker, Poliakoff & Streitfeld, P.A., Fort Lauderdale, for appellee.
SCHOONOVER, Chief Judge.
The appellants, Edward J. Seibert, A.I.A., Architect and Planner, P.A., and Edward J. Seibert, individually (Seibert), challenge a final judgment entered against them and in favor of the appellee, Bayport Beach and Tennis Club Association, Inc. (Association). We find that the trial court erred by failing to grant Seibert's motion for a directed verdict. We, accordingly, reverse and remand for the entry of a judgment in favor of Seibert.
Bayport Beach and Tennis Club is a condominium development located on the Gulf of Mexico in Longboat Key, Florida. The project was developed between 1979 and 1983 by Bayport-Hunt Corporation. Ron A. Royal, Inc., was the general contractor and Seibert was the architect. As architect on the project, Seibert was responsible for the design of the buildings in question and was required to comply with the Standard Building Code which had been adopted by the city. Based upon his professional opinion concerning the requirements of the code, Seibert designed each second floor dwelling unit with one independent unenclosed set of stairs leading directly from the front door of each unit to the ground. Seibert submitted the completed building plans to Mr. Herbert Lovett, Longboat Key's Chief Building Inspector and Chief Code Enforcement Officer. Mr. Lovett's interpretation of the Standard Building Code led him to the conclusion that because of the size of the units and because the exit was unenclosed, Seibert's single unenclosed exit design complied with the code. After the fire department approved the plans, Mr. Lovett issued a building permit and the units were subsequently built according to those plans.
The individual condominium owners assumed control of the Association in 1985 and shortly thereafter filed an action against the developer, Seibert, the engineer, the general contractor, and several subcontractors. The Association alleged that fifty-one separate defects existed in the condominium buildings. The Association's complaint against Seibert alleged in two counts that Seibert was guilty of architectural negligence and that he was statutorily responsible to the Association because of the building code violations. After several years of discovery, the action was set for trial in July 1989. Prior to trial, the Association settled with the general contractor, the engineer, and several subcontractors. One of the defendants, W.R. Grace and Company, obtained a summary judgment. The developer, Bayport-Hunt defaulted.
At trial, the Association claimed that Seibert was responsible for damages because *891 of defective roofing design and construction, defective fire exit design, defective stucco design and construction, and defective ceiling slab design. The trial court denied Seibert's motion for a directed verdict made at the close of the Association's case-in-chief and renewed at the close of all of the evidence. The jury returned a verdict finding that Seibert was not guilty of negligence or building code violations with respect to the roof, the stucco, or ceiling slabs, but found him liable for defective fire exit design.
In connection with the fire exit design claim, the Association, at trial, presented an expert witness who testified concerning Seibert's liability. Mr. Robert Crain, a structural engineer, testified that under his interpretation, one unenclosed exit did not comply with the Standard Building Code. Seibert, in addition to his own testimony that in his professional opinion one unenclosed exit met the requirements of the code, presented the testimony of two experts, Mr. Herbert Lovett and Mr. Gary Walker.
Mr. Lovett testified that he interpreted the code as only requiring one unenclosed exit. Mr. Gary Walker, a professional engineer, testified that he had been employed by the Southern Building Code Congress from 1976 to 1984. The Southern Building Congress promulgated the Standard Building Code which was adopted by Longboat Key. During his employment with the Southern Building Code Congress, Mr. Walker was manager of engineering and responsible for building code changes, hearings, plans, reviews, and code interpretation. He testified that the official interpretation of the pertinent sections of the code was that one unenclosed exterior exit was authorized for the design of the second floor units. He also testified that Seibert's design of the exits was appropriate, complied with the code as he and the Southern Building Code Congress had drafted it, and was consistent with safe design as intended by the code. After the jury returned a verdict finding Seibert liable for the costs of adding a second exit, Seibert filed a timely notice of appeal from the judgment entered pursuant to the jury verdict. The Association filed, but did not pursue, a cross-appeal.
Because of the verdict form submitted to the jury, we are unable to determine if the jury found that Seibert was responsible because he committed professional negligence or because of section 553.84, Florida Statutes (1979), which provides a cause of action to anyone damaged as a result of a violation of an approved building code. It does not matter in this case, however, because under either theory presented to the jury, the basis of liability was the alleged violation of the building code.
The jury was asked to decide if the exits were designed in compliance with the Standard Building Code. In order to make this determination, the jury needed to know what the code required. This information was presented to them by means of expert testimony concerning the interpretation of the code. Expert testimony may be presented if scientific, technical, or other specialized knowledge will assist the trier of fact in understanding the evidence, or in determining a fact in issue. §§ 90.702, 90.703, Fla. Stat. (1979). The admission of such testimony has been allowed to explain the character of an object in order to determine if it complies with a statute, ordinance, or code. Noa v. United Gas Pipeline Co., 305 So.2d 182 (Fla. 1974); Grand Union Co. v. Rocker, 454 So.2d 14 (Fla. 3d DCA 1984); Chimeno v. Fontainbleau Hotel Corp., 251 So.2d 351 (Fla. 3d DCA 1971). In this case, however, the experts did not testify concerning the character of an object or the type of design, nor did they give testimony concerning disputed facts which would determine the requirements of the Standard Building Code. See Krispy Kreme Doughnut Co. v. Cornett, 312 So.2d 771 (Fla. 1st DCA 1975), cert. denied, 330 So.2d 16 (Fla. 1976). They instead presented conflicting opinions as to how the code should be interpreted. The jury was allowed to determine the meaning of the code and then whether Seibert violated the code by designing only one fire exit. This was error. An expert should not be allowed to testify concerning questions of law, Devin v. City of Hollywood, 351 So.2d 1022 (Fla. 4th DCA 1976); 31A Am.Jur.2d *892 Expert & Opinion Evidence § 136 (1989), and the interpretation of the building code presented a question of law. Urban Renewal Agency v. Bethke, 420 S.W.2d 803 (Tex. Ct. App. 1967); Hinson v. Dep't of Transp., 217 S.E.2d 606, 135 Ga. App. 258 (1975). See also, Tropicana Club v. James H. Topping, Inc., 502 So.2d 29 (Fla. 2d DCA 1987).
It was the duty of the trial court to interpret the meaning of the code and instruct the jury concerning that meaning. Any conflicts in interpretation were for the court to resolve and their resolution was not a jury issue. Manning v. Public Serv. Electric & Gas Co., 58 N.J. Super. 386, 156 A.2d 260 (N.J.Sup.Ct.App.Div. 1959).
The trial court not only erred by submitting a question of law to the jury, but under the circumstance of this case it also erred by not interpreting the Standard Building Code to require one fire exit per second floor condominium unit and then directing a verdict for Seibert.
It is clear that Seibert had a duty to design the second floor units and their fire exits in a manner that complied with the Standard Building Code and his failure to use due care in doing so would make him liable. Robsol, Inc. v. Garris, 358 So.2d 865 (Fla. 3d DCA 1978). Graulich v. Frederic H. Berlowe & Assocs., Inc., 338 So.2d 1109 (Fla. 3d DCA 1976).
Seibert contends that he fulfilled this duty by first determining that in his professional opinion only one exit was required and then obtaining and relying on Longboat Key's permit. We agree.
Mr. Lovett was the chief building inspector and the chief code enforcement officer for the city of Longboat Key. As such, his office was the local enforcement agency charged with enforcing the Standard Building Code. § 553.71(3), Fla. Stat. (1979). While acting in that capacity, Mr. Lovett received the design submitted by Seibert, interpreted the code as requiring only one exit and, accordingly, reached the decision that the exit plan complied with the code and issued a permit. Seibert accepted this decision which conformed to his professional judgment and, as a result, constructed the buildings as designed.
When an agency with the authority to implement a statute construes the statute in a permissible way, that interpretation must be sustained even though another interpretation may be possible. Humhosco v. Dep't of Health & Rehabilitative Servs., 476 So.2d 258 (Fla. 1st DCA 1985). Since Longboat Key's interpretation was entitled to such great weight and was not shown to be clearly erroneous, the trial court erred by not accepting the city's interpretation and then directing a verdict in favor of Seibert. See Department of Ins. v. Southeast Volusia Hosp. Dist., 438 So.2d 815 (Fla. 1983).
We, accordingly, reverse and remand with instructions to enter a judgment in favor of Seibert.
DANAHY and LEHAN, JJ., concur.